**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-01146-REB-KLM

LINDA L. WILD, a Colorado resident,
ADVANTAGE TAX SOLUTIONS, INC., a Colorado corporation,
CHRIS CASSON, a Colorado resident,
GILBERT VIGIL, a Colorado resident,
PHIL LORING, JR., a Colorado resident,
DEBORAH E. SCHMIDT, a Colorado resident,
TODD H. SHANNON, a Colorado resident,
JEANNINE HARDING, a Colorado resident, and
KEVIN POLANSKY, a Colorado resident,

    Plaintiffs,

v.

H&R BLOCK, INC., a Missouri corporation,
H&R BLOCK TAX SERVICES, INC., a Missouri corporation,
H&R BLOCK ENTERPRISES, LLC, a Missouri limited liability company,
H&R BLOCK SERVICES, INC., a Missouri corporation, and
HRB TAX GROUP, INC., a Missouri corporation,

    Defendants.

**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**

**Blackburn, J.**

The matter before me is the plaintiffs' **Application for Temporary Restraining Order/Motion for Preliminary Injunction** [#9][1] filed May 3, 2011. The defendants filed a response [#22] and the plaintiffs filed a reply [#24]. On May 4, 2011, the court issued a scheduling order [#18] concerning the plaintiff's motion. Although not explicitly specified in that order [#18], the court's scheduling order was addressed only to the

---

[1] "[#9]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

plaintiffs' motion for a temporary restraining order. In this order, I address only the plaintiff's motion for a temporary restraining order, which I deny.

## I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1332 (diversity).

## II. STANDARD OF REVIEW

A temporary restraining order is extraordinary relief. A party seeking a temporary restraining order or preliminary injunction must show (1) a substantial likelihood that the movant eventually will prevail on the merits; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. **Lundgrin v. Claytor**, 619 F.2d 61, 63 (10th Cir. 1980). In addition to the foregoing factors, a party seeking a temporary restraining order also must demonstrate clearly, with specific factual allegations, that immediate and irreparable injury will result absent a temporary restraining order. FED. R. CIV. P. 65(b).

## III. FACTS

Plaintiff Linda L. Wild is a long term franchisee of H & R Block (Block).[2] In 1981, Wild and H & R Block executed a franchise agreement, which has been renewed by Wild at the end of each its five year terms ever since. *Motion for TRO* [#9], Exhibit 1 [#10 - filed under seal] (Franchise Agreement). The Franchise Agreement contains an

---

[2] In the body of the Amended Complaint [#4], the franchisor is named as H & R Block Tax Services LLC. *Amended Complaint* [#4], ¶¶ 14, 19. H & R Block Tax Services, Inc., and not H & R Block Tax Services LLC, is named a defendant in the caption of the Amended Complaint. Apparently, H & R Block Tax Services, Inc., was the predecessor in interest of H & R Block Tax Services LLC. *Defendant's response* [#22], p. 2 n. 1. Given this information, it appears that the parties agree that H & R Block Tax Services LLC is the franchisor.

arbitration provision which provides, in relevant part:

> The arbitration award shall be in accordance with the rules and regulations then obtaining of the American Arbitration Association or any other rules unanimously adopted by the arbitrators . . .
>
> \* \* \* \*
>
> . . . a decision of the arbitrators shall in all events be rendered within 90 days after giving of the arbitration notice.  Additional time for the decision may be granted by mutual consent of Block and Franchisee . . . but in no case longer than 90 days after the last day of the initial 90 days.  If said decision is not rendered within the time set forth herein, then arbitration may be terminated by either party and either party may then proceed to have the matter resolved in a court of law.

*Franchise Agreement*, ¶ 12.

In April, 2010, Wild initiated an arbitration against Block by sending an arbitration notice to Block, in compliance with the terms of the Franchise Agreement.  The dispute was not resolved, and Wild filed a demand for arbitration with the American Arbitration Association (AAA), the body designated in the Franchise Agreement.  On June 18, 2010, Wild and Block agreed to stay the arbitration, including the running of the 90-day decision deadline specified in the Franchise Agreement. Under the terms of the agreement, either party could re-commence the arbitration by notifying the other party. With that notice, the 90 day time period for a decision would re-commence.  The parties agreed also that  if the arbitration was re-commenced, the additional 90 day time period would remain available.  Block re-commenced the arbitration on September 9, 2010.  Later, the parties agreed to invoke the additional 90 day period, which meant that an arbitration decision was due by March 9, 2011.  A hearing on the arbitration was set for March 1 - 3, 2011.

An arbitration hearing in early March posed a significant logistical challenge for Wild because early March is prime time in her business, which is preparation of tax

returns.  Wild asked Block if Block would agree to move the date of the arbitration hearing to a date after tax season, or sometime in May, 2011.  Block agreed and Block and Wild jointly requested that the arbitration panel re-set the hearing.  The hearing was re-set to the week of May 23, 2011.  On April 14, 2011, Wild sent notice to Block, the AAA, and the arbitration panel purporting to terminate the arbitration.  Block objected to Wild's attempt to terminate the arbitration.  The arbitration panel directed the parties to brief the issues surrounding Wild's effort to terminate the arbitration.  The arbitration hearing remains scheduled to begin during the week of May 23, 2011.

In her motion for temporary restraining order, Wild argues that she no longer is obligated to arbitrate her disputes with Block; thus, she seeks a temporary restraining order from this court staying the arbitration proceeding.  Wild argues in her motion that the 180 day deadline for a decision on the arbitration expired on March 9, 2011.  After that expiration, Wild argues, she had the right under paragraph 12 of the Franchise Agreement to terminate the arbitration and file suit against Block.  Block argues that Wild effectively agreed to extend the deadline for an arbitration decision, or to stay the running of the applicable time period, when she requested and ultimately consented to moving the arbitration hearing from March 1 - 3, 2011, to the week of May 23, 2011.  Block argues in the alternative that Wild's request and consent to the change of the date of the arbitration hearing constitutes a waiver of her right to terminate the arbitration based on expiration of the deadline.

Block argues also that the Franchise Agreement includes Wild's agreement to permit the arbitration panel to determine its jurisdiction, including the existence, scope, and validity of the arbitration agreement.  In her reply, Wild argues that the Franchise Agreement does not constitute an enforceable agreement to permit the arbitration panel

to determine its jurisdiction, including the existence, scope, and validity of the arbitration agreement.

### IV.  ANALYSIS

Reading Wild's motion and reply together, I find that Wild asserts two independent bases for her request for a temporary restraining order staying the pending arbitration hearing.  First, Wild argues that the Franchise Agreement does not include an agreement that permits the arbitration panel to determine its jurisdiction, including the scope and validity of the arbitration agreement, and whether the arbitration panel has jurisdiction over such issues.  Second, Wild argues that she validly terminated the arbitration under the terms of the Franchise Agreement.

### A.  SUBSTANTIAL LIKELIHOOD OF SUCCESS

1.  <u>Scope of Issues Covered by Arbitration Agreement</u> - The fact that the arbitration panel directed the parties to brief the issues surrounding Wild's effort to terminate the arbitration demonstrates that the arbitration panel has concluded that it has the authority to determine its jurisdiction, including the existence, scope, and validity of the arbitration agreement.  If the arbitration panel has this authority, then it may determine the validity of Wild's effort to terminate the arbitration.  Wild argues that the arbitration panel does not have this authority and seeks to stay the arbitration on this basis.

When the parties to an arbitration agreement "clearly and unmistakably" agree to submit questions of arbitrability to the arbitrator, a court must defer to the arbitrator on such issues.  **See, e.g., Rent-A-Center, West, Inc. v. Jackson**, ___ U.S. ___, ___, 130 S.Ct. 2772, 2782 (2010).  Questions of arbitrability, sometimes called gateway issues, generally include whether the parties have a valid arbitration agreement, whether the

parties are bound by an arbitration clause, and whether an arbitration clause applies to a particular controversy. *Id*.

The Franchise Agreement, which was executed in 1981, provides that the "arbitration award shall be in accordance with the rules and regulations then obtaining of the American Arbitration Association . . . ." In 1999, the AAA adopted Rule R-7(a), which provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Response* [#22], p. 5 (citation to AAA Commercial Arbitration Rules). Block argues that the Franchise Agreement's adoption of the AAA rules constitutes an agreement to permit the arbitrator to resolve gateway issues. Wild argues that because Rule R-7(a) was adopted 18 years after the Franchise Agreement was executed, Wild cannot be seen as having agreed "clearly and unmistakably" to permit the arbitrator to resolve gateway issues. On this basis, Wild asks the court to stay the arbitration and determine the validity of Wild's termination of the arbitration.

I conclude that Wild has not demonstrated a substantial likelihood that she eventually will prevail on the merits of her claim that the arbitration panel does not have the authority to determine gateway issues, including the validity of Wild's termination of the arbitration. Many courts have held that incorporation of AAA rules, including Rule R-7(a), in an arbitration agreement constitutes a clear and unmistakable agreement to permit an arbitrator to resolve gateway issues. **See, e.g., Terminix Intern. Co., v Palmer Ranch Ltd. P'ship**, 432 F.3d 1327, 1332 - 1333 (11th Cir. 2005). The Franchise Agreement adopts "the rules and regulations then obtaining of the American Arbitration Association," which adoption inherently includes changes and additions to those rules. Given this language, I conclude that there is, at minimum, a strong

argument that the arbitration provision of the Franchise Agreement constitutes a clear and unmistakable agreement, after the AAA's adoption of Rule R-7(a), to permit the arbitrator to resolve gateway issues.  Wild relies heavily on the opinion of the Colorado Court of Appeals in ***Taubman Cherry Creek Shopping Center, LLC v. Neiman-Marcus Group, Inc.***, ___ P.3d ___, 2010 WL 3584288 (Colo. App. 2010) in support of her position.  I have reviewed that case, some of the cases cited therein, and other applicable law.  I conclude that ***Taubman*** and the cases cited in that opinion do not show that Wild has a substantial likelihood that she eventually will prevail on the merits of this claim.  Similarly, the other applicable law cited by the parties does not show that Wild has a substantial likelihood that she eventually will prevail on the merits of this claim.

      2.  <u>Validity of Wild's Termination of Arbitration</u> - Even if the arbitration agreement permits the arbitration panel to determine gateway issues, Wild argues that she validly terminated the arbitration because the deadline for a decision established in the Franchise Agreement expired on March 9, 2011.  Wild contends that the expiration of that deadline gave her the option to terminate the arbitration under the terms of the Franchise Agreement.  The fact that Wild sought and obtained a re-setting of the arbitration hearing, moving the hearing from March 1 -3, 2011, to the week of May 23, 2011, provides significant support for Block's argument that Wild effectively agreed to stay the arbitration, as she had agreed to do in the past, or that Wild waived the enforcement of the March 9, 2011, deadline for the arbitration panel's decision.  Contract law provides substantial support for this position.  Given these factual and legal circumstances, I conclude that Wild has not shown that she has a substantial likelihood that she eventually will prevail on the merits of her claim that she validly has

terminated the pending arbitration.

I note that Wild has not argued for application of the modified standard applied by the United States Court of Appeals for the Tenth Circuit in certain cases. Under the modified standard, if the movant "has satisfied the first three requirements for a preliminary injunction, the movant may establish likelihood of success by showing questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." **Walmer v. U.S. Dept. of Defense**, 52 F.3d 851, 854 (10th Cir. 1995).[3] Wild has not demonstrated in her motion that this case presents "questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." **Id**. Even if I assume that Wild has satisfied the other three requirements for a temporary restraining order, and assume that the modified standard is applicable, Wild's motion still fails to satisfy the key requirement of showing a likelihood of success on the merits of the claims on which she bases her motion for a temporary restraining order.

## B. OTHER FACTORS

Wild has not demonstrated a substantial likelihood of success on the merits of either of her two claims. As a result, the entry of a temporary restraining order is not proper. Given this conclusion, I decline to address the other factors applicable to a temporary restraining order analysis.

---

[3] I note that at least one court in this district recently questioned the continued viability of this standard in light of the Supreme Court's decision in **Winter v. Natural Resource Defense Council, Inc.**, – U.S. –, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). **See Predator International, Inc. v. Gamo Outdoor USA, Inc.**, – F.Supp.2d –, 2009 WL 3526497 at *5 (D. Colo. Oct. 22, 2009).

## IV. ORDER

**THEREFORE, IT IS ORDERED** that the plaintiffs' **Application for Temporary Restraining Order/Motion for Preliminary Injunction** [#9] filed May 3, 2011, is **DENIED** to the extent the plaintiff seeks a temporary restraining order;

2. That the plaintiffs' **Application for Temporary Restraining Order/Motion for Preliminary Injunction** [#9] filed May 3, 2011, **SHALL REMAIN PENDING** to the extent the plaintiff seeks a preliminary injunction; and

3. That the hearing set herein for Friday, May 13, 2011, at 8:30 a.m., is **VACATED**.

Dated May 12, 2011, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge